# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| EBONY FLAKE d/b/a EBONY FLAKE CREATIVE CONSULTANT, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| SELMA TO MONTGOMERY 50TH ANNIVERSARY MARCH COMMEMORATION FOUNDATION, INC., d/b/a SELMA TO MONTGOMERY MARCH FOUNDATION, | )  Case No.: _____<br>)<br>)<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff EBONY FLAKE d/b/a Ebony Flake Creative Consultant ("Plaintiff" or "Ms. Flake") brings this Complaint against Defendant SELMA TO MONTGOMERY 50TH ANNIVERSARY MARCH COMMEMORATION FOUNDATION, INC., d/b/a SELMA TO MONTGOMERY MARCH FOUNDATION ("Defendant" or "the Foundation") and alleges as follows:

### Parties

1. Plaintiff Ebony Flake is an adult citizen of Texas.

2. Defendant Selma to Montgomery 50th Anniversary March Commemoration Foundation, Inc. d/b/a Selma to Montgomery March Foundation,

is a nonprofit corporation formed in Alabama and has its principal place of business in Dallas County, Alabama. Thus, Defendant is a citizen of Alabama.

## Jurisdiction and Venue

3. This Court has subject-matter jurisdiction because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of costs and interest. *See* 28 U.S.C. § 1332.

4. Venue is proper before this Court because Defendant's primary place of business is located within the Northern Division of the Southern District of Alabama. *See id.* § 1392(b)(1).

## Factual Allegations

5. In or around January 2025, the Foundation engaged Ms. Flake to develop and produce a media project to commemorate the anniversary of this historic civil rights march from Selma to Montgomery.

6. During that time, the initial plan was for Ms. Flake to develop an interactive website that would allow visitors to learn more about the events and the people related to the historic march.

7. Although no written contract was formally signed, the agreement was for Ms. Flake to produce a podcast series using an estimated budget of $50,000. However, the parties understood and agreed that $50,000 was an estimate, and that

the price for Ms. Flake's services may increase depending on what the Foundation wanted for the final product or in the future.

8. The $50,000 budget was a significant departure from Ms. Flake's usual fee for these types of media productions, but Ms. Flake offered a discount because of the Foundation's non-profit status and Ms. Flake's personal affection for the Foundation's mission. Normally, a budget for Ms. Flake's work on a similar project would have been substantially more.

9. After Ms. Flake and her team began working on the project, the Foundation decided to change the approach to the production process. Instead of reviewing and approving episode concepts, outlines, and overviews—as is customary—the Foundation's representative became heavily involved at the word-by-word and paragraph-by-paragraph level, essentially seeking to write the script. This change in workflow significantly altered the production process and impacted the nature of Ms. Flake's work.

10. The Foundation initially paid Ms. Flake a deposit of $25,000 to begin work, and Ms. Flake began working with her team, which included a celebrated, experienced producer with a strong track record in documentary and podcast production. Notably, one of his documentary credits is an Academy Award–nominated feature.

11. Ms. Flake and her team recorded interviews with people relating to the march, recorded hours of narrated audio, and edited the recordings to make three podcast episodes that were consistent with the Foundation's request for work product.

12. Ms. Flake and her team also scripted, and was in the process of producing, two additional episodes.

13. Throughout the production process, the Foundation would not timely respond to Ms. Flake's requests for information or feedback. The Foundation would also request changes to the production, which led to delays, extra work, and increased costs. The feedback and direction were not only slow and conflicting but also frequently revisited matters that had already been settled, requiring repeated justification and rework. This pattern created ongoing disruption and made it extremely difficult to move the project forward efficiently.

14. In or around March 2025, the Foundation paid Ms. Flake an additional $12,500 for work toward the production.

15. However, the Foundation continued to provide conflicting instructions for the production and would change its mind for the formatting and substance of the production.

16. In or around April 2025, due to the confusion and chaos resulting from the Foundation's communication failures, which led to production delays, Ms. Flake

was forced to release certain contractors and others that were part of her team, and she ultimately canceled her work on the production.

17. Over the time of Ms. Flake's engagement on the production, Ms. Flake incurred substantial costs and expenses, worked a significant number of hours, and engaged contractors that also worked a significant number of hours. However, Ms. Flake was not fully compensated for her and her team's work.

18. The value of Ms. Flake's services for which she has not been compensated exceeds $75,000.

## Causes of Action

### Count One—Breach of Implied Contract

19. Plaintiff incorporates Paragraph Nos. 5 through 18 into this count.

20. Through their course of dealings and performances, Ms. Flake and the Foundation had an implied and enforceable agreement for Ms. Flake to produce the requested podcast episodes.

21. Ms. Flake performed under the implied contract up until the point she justifiably terminated the contract due to the Foundation's lack of good faith and fair dealing.

22. The Foundation breached the contract by not participating in the production process or by paying Ms. Flake the value of her work under the contract.

23. As a result of the Foundation's breach, Ms. Flake has suffered damages.

### Count Two—*Quantum Meruit*

24. Plaintiff incorporates Paragraph Nos. 5 through 18 into this count.

25. In the alternative to Count One, Ms. Flake is entitled to full compensation for the services she provided and expenses she incurred for the Foundation.

26. Ms. Flake performed her services for the Foundation, and Ms. Flake had and has a reasonable expectation of compensation for performing those services and expenses.

27. The Foundation knew Ms. Flake was performing the services, and the Foundation knowingly received the benefit of those services and expenses.

28. The Foundation has not paid Ms. Flake the full reasonable value of the services Ms. Flake performed and expenses incurred.

### Requested Relief

29. Based on the foregoing causes of action, IRG seeks judgment and asks for the following damages and relief:

   a. All compensatory damages, including incidental and consequential damages;

   b. Pre- and post-judgment interest;

   c. Compensation for the full reasonable value of the services IRG performed for Defendants; and

   d. All other damages and relief available and proper under the law or equity.

        Respectfully submitted,

        */s/ John G. Dana*

        */s/ Robert J. Sewell*
        *Attorneys for Plaintiff Ebony Flake*

OF COUNSEL:
John G. Dana (ASB-0493-A52J)
*jdana@gattorney.com*
Robert J. "Jay" Sewell (ASB-0668-J93F)
*jsewell@gattorney.com*
GORDON, DANA & GILMORE, LLC
600 University Park Place, Suite 100
Birmingham, Alabama 35209
(205) 874-7950
(205) 874-7960 (Facsimile)

**TO BE SERVED BY PRIVATE PROCESS SERVER, CERTIFIED MAIL RETURN RECEIPT REQUESTED, OR COMMERCIAL CARRIER:**

Selma to Montgomery 50th Anniversary Commemoration Foundation, Inc.
Attn: Hank Sanders, Registered Agent
6 U.S. Highway 80 East
Selma, Alabama 36701